Barry SWITZER, et al., Plaintiffs,

v.

MUCH, SHELIST, FREED, DENEN-BERG, AMENT, BELL & RUBEN-STEIN, P.C., Defendant.

No. CIV–01–1152–HE.

United States District Court,
W.D. Oklahoma.

Jan. 14, 2003.

Robert N. Naifeh, Jr., George William Velotta, II, Derryberry Quigley Solomon & Naifeh–OKC, Oklahoma City, OK, Timothy E. Galligan, Timothy E. Galligan PLLC, Birmingham, MI, for plaintiffs.

Harvey D. Ellis, Jr., Harry A. Woods, Jr., Crowe & Dunlevy–OKC, Scott K. Suchy, Turner, Turner, Goralewicz & Dillingham, Richard M. Glasgow, Tom L. King, Elizabeth J. Bradford, King Law Firm, Oklahoma City, OK, for defendant.

### ORDER

HEATON, District Judge.

Following the nonappearance of representatives of the defendant and its insurer at the court-ordered settlement conference in this case, Magistrate Judge Argo conducted a

hearing addressing potential sanctions. On December 20, 2002, Judge Argo submitted his Report and Recommendation, finding that defendant had violated the local rules and the prior orders of this Court and that significant sanctions were warranted, and recommending that, as an appropriate sanction, defendant be precluded from defending against plaintiffs' claims on the issue of liability other than through cross-examination of plaintiffs' witnesses. Defendant would, however, be allowed to present witnesses regarding damages.[1] Defendant has filed its objection to the Report ("Defendant's Objection" hereafter) and plaintiffs have responded.

Having considered the Report, the submissions of the parties, and the authorities cited therein, the Court concurs in the Magistrate Judge's conclusion that defendant's conduct violated Court rules and orders and that substantial sanctions are warranted. However, the Court also concludes that sanctions different from those proposed by Judge Argo best fit the circumstances presented here.

## BACKGROUND

The Report sets out the bulk of the pertinent background facts and they will not be exhaustively repeated here. Most pertinent to the Court's analysis and conclusions are the following facts.

At the March 5, 2002, scheduling conference, the Court ordered this case to mediation. The scheduling order directed that the mediation occur by June 1, 2002. That date was subsequently extended to August 1, 2002 by amended scheduling orders entered on June 5 and August 14, 2002.[2] When a subsequent request by the parties for another revision of the scheduling deadlines made clear the mediation had not occurred as ordered, the Court granted various extensions of the deadlines, including that for the mediation,[3] and included the following language in the revised scheduling order:

> This case was *ordered* to mediation by August 1, 2002. Both parties are admonished that an order for mediation is just that—an order. It is not a suggestion to be ignored at will.

Third Amended Scheduling Order, p. 2 (emphasis in original). Although the Court made no effort to determine relative culpability of the parties for violation of its order at the time, Judge Argo heard testimony as to the circumstances surrounding the missed deadline and concluded it was principally defendant's lack of diligence which led to noncompliance with the order.[4]

On November 21, 2002, the Court directed the parties to file a report as to the mediation, stating its date, the identity of the mediator and the results. From the information included in plaintiffs' response, the Court learned the mediation had occurred, but also concluded defendant might have violated the applicable rules regarding attendance.[5] LCvR16.3 Supp. § 3.3(a). The Court ordered defendant to show cause why it should not be sanctioned for noncompliance with those requirements. The defendant's response made clear it had violated the rules in that it did not have a client representative present, did not have the insurer present, and its lead counsel did not attend. In its subsequent order, the Court explained at some length the basis for the attendance

---

1. *Report and Recommendation, December 20, 2002, (the "Report" hereafter), p. 694.*

2. *The Report refers to the Court's August 14, 2002, scheduling order as referring the case to mediation. Report, p. 690. The reference in the August 14, 2002, order was actually just a repetition of the language included in prior scheduling orders.*

3. *The deadline for mediation was extended to November 15, 2002.*

4. *Report, p. 691. Defendant suggests it is unfair for plaintiffs to assert it was defendant's fault, but do not take serious issue with the underlying factual accuracy of their assertion. Defendant's Objection, p. 7. See also sanctions hearing transcript, p. 14.*

5. *Contrary to defendant's suggestion, plaintiffs did not move for sanctions or otherwise initiate the Court's action. They supplied information as to the mediation conference in response to the Court's order.*

requirements at mediation conferences and sanctioned defendant for its noncompliance, imposing monetary sanctions of $1120. Order, December 5, 2002.

The Court had previously ordered the case to a judicial settlement conference pursuant to the local court rules.[6] That conference was to occur on December 18, 2002. Again, defendant failed to appear in accordance with the local rules and the Court's order, as more fully set out in the Report.

The factual background thus shows that defendant (along with plaintiffs) was admonished for failing to follow the Court's orders as to mediation, that defendant was sanctioned for its subsequent failure to observe the attendance requirements at the mediation conference, and, finally, that defendant has now once again violated substantially the same rules.

### DISCUSSION

It is clear that defendant violated the applicable rules and this Court's order. The local rules require the attendance of the lead attorney who will try the case, the parties or, in the case of a corporation, a representative of the party having full settlement authority, and "other interested entities" such as insurers. LCvR16.2(c). Here, no one but counsel appeared for defendant.

█ Defendant argues that the local rule is ambiguous and should be interpreted as defendant's counsel apparently interpreted it, to the effect that the insurer's representative may also represent the corporate party. That interpretation is incorrect. Both the structure and express terms of the rule,

LCvR16.2, make clear that both a representative of the party *and* a representative of any insurer involved are expected to attend.[7] The order referring the case to settlement conference is even more explicit in its requirements for party presence, involvement, and settlement authority, separate from those requiring the attendance of an insurer representative with full settlement authority. Of course the discussion is somewhat academic in the present context, as defendant had *neither* a party representative nor an insurer representative present.

The local rules also require that any deviation from the attendance requirements be approved by the settlement judge. LCvR16.2(c). No such leave was sought.[8]

Defendant argues that the Court's local rules are invalid insofar as they purport to direct the attendance of a non-party --- here, the insurer --- at a settlement conference. If the present circumstances involved an effort to hold the insurer in contempt or to otherwise impose monetary liability directly on the insurer, defendant's argument might have both application and merit. In the present circumstances, it does not. The matter now before the Court involves sanctions against defendant, a party to the action. While the insurer has an unmistakable financial interest in minimizing the exposure of its insured to liability, and hence has a strong incentive to attend and otherwise comply with orders regarding settlement conferences, the question of whether the Court might directly order a non-party insurer to do something or mete out penalties for its failure to comply is simply not before the Court. Defendant's argument therefore has no application to the present controversy.

---

6. *LCvR16.2. The Court's referral order, which also set out at length the various attendance requirements, was entered November 14, 2002.*

7. *Contrary to defendant's suggestion, the Court does not view an insurer as being "directly or actively associated" with the party, within the meaning of the rule.*

8. *In connection with its failure to obtain leave for nonattendance at the prior mediation, defendant asserts plaintiffs did not object to the nonappear-*

*ance of the insurer and/or party representative. Defendant's Objection, p. 12. Plaintiffs dispute the assertion, but the whole discussion misses the point. The requirement in question was based on the Court's rules and the Court's order. Only the Court, not the opposing party or its attorney, may excuse compliance. LCvR16.3 Supp. § 3.3(c) states, in pertinent part: "Attendance may only be excused by filing proper application with the assigned judge...."*

■ Defendant also argues the Court's settlement procedures may be invalid due to inconsistency with the provisions of Fed. R.Civ.P. 16(c). Defendant's Objection, p. 24–5. It is unclear whether defendant is suggesting Rule 16(c) authorizes a court to require only a represented party's lawyer to be present (i.e. not the party itself) or whether it is suggesting Rule 16(c) confers a right on the party to elect to participate in person or by phone. Neither suggestion has merit. The rule explicitly states the court may, where appropriate, order "a party or its representative" to be present. That result does not appear to be different from what a court has the inherent power to do anyway. Further, the plain import of the rule is to give the court, not the party, the option of requiring attendance either by phone or in person.

In short, there is no question the Court's orders and the local rules were violated. The question thus becomes whether Judge Argo properly recommended sanctions and, if so, what the appropriate sanctions are.

■ The Court fully concurs in Judge Argo's conclusion that sanctions are warranted and that they should be severe and substantial. The described pattern of events—repetitive violations of the Court's rules and orders—warrants a substantial sanction. If this case involved merely an isolated instance of someone forgetting a meeting or misinter-preting a rule, the result would be different. However, that is not what these facts present. Here, defendant was warned via admonishment to observe the Court's orders. It was warned again, by way of monetary sanctions, about its noncompliance with the attendance rules. Against that backdrop, it violated substantially the same rules yet again.

Magistrate Judge Argo concluded, and the Court concurs, that the facts reflect that "Defendant has consistently displayed an arrogant attitude and disregard for this Court's scheduling orders." Report, p. 690.[9] It is apparent from (among other things) counsel's comments at the sanctions hearing that it viewed settlement discussions in this case as useless and was uninterested in participating in them.[10] Its repetitive violations reflect the same attitude. The defendant's Objection to Judge Argo's recommendations does nothing to dispel, and indeed continues, the pattern of arrogance.

Although the Court views Judge Argo's Report as a measured and thorough analysis of, and reaction to, the circumstances, defendant elects to characterize Judge Argo as "incensed," acting with "rancor," "acute indignation," "wrath," "fury," and as being "intolerant of minor inconveniences."[11] Further, defendant couples its hyperbolic characterizations with thinly veiled sugges-

---

**9.** *Judge Argo also referred to a violation by defendant of Local Rule 37.1 relating to discovery, and to a belated attempt by defendant to revise its witness list as part of defendant's pattern of conduct. The Court does not view those incidents as having a bearing on the present controversy, but nonetheless agrees with the Report's conclusion as to defendant's attitude and regard for the Court's orders.*

**10.** *The Court has reviewed the entire transcript of the sanctions hearing, not merely the redacted version attached to Defendant's Objection. Whatever may be the consequence of disclosing information about settlement discussions to the trial judge in other contexts, that concern has no application here. If the Magistrate Judge considered particular evidence in connection with his decision on the sanctions issue, it seems obvious that this Court must have access to the same informa-*

*tion in evaluating his decision. Further, the Court notes that the most explicit references at the hearing to settlement amounts or ranges came from defendant's counsel.*

**11.** *The latter phrase appears in connection with perhaps the most obvious manifestation of arrogance in Defendant's Objection. Judge Argo noted Mr. King, lead counsel for defendant, was twenty minutes late for the conference and had not called to advise he would be late or state the reason therefore, and that the conference was delayed as a result. Report, p. 692. Defendant chooses to characterize the Judge's reaction as intolerance of the inconveniences occasioned by the needs of a sick child, which of course misses the point entirely, and sarcastically suggests the need for a rule to forewarn others of this policy of intolerance. Such an argument is beneath the level of professionalism the Court would expect from counsel of the caliber of those representing defendant.*

tions of bias and partiality on the Judge's part. Defendant's characterizations of Judge Argo's conduct and Report are plainly inconsistent with what the record reflects.

Of considerable consequence to the Court in evaluating defendant's conduct is defendant's reaction, or lack of reaction, to the sanctions order previously entered. The submissions from defendant set out in considerable detail the efforts of its counsel to arrange attendance of an insurance representative at the conference. However, there is no indication in the record that defendant's counsel attached any significance to the Court's prior sanctions order, at least insofar as communication with its "client" was concerned.[12] Whether counsel communicated the order to his client and the law firm ignored it, or whether counsel thought it so insignificant as to not warrant transmission or communication, the result is the same—a blatant disregard of this Court's orders.

Defendant argues a substantial sanction against Much Shelist is inappropriate here since it, as opposed to its attorneys or insurer, is wholly blameless or "truly innocent." Such an effort to compartmentalize the infractions in this case in unpersuasive. "Those who act through agents are customarily bound by their agent's mistakes." *Gripe v. City of Enid*, 312 F.3d 1184, 1189 (10th Cir.2002). Such a conclusion is particularly applicable where, as here, the party is a corporation which must necessarily act through agents. The defendant's conduct, consisting of the actions of all its agents, cannot be explained away on the basis of noninvolvement, mistake or inadvertence.[13]

In sum, the Magistrate Judge's conclusion that defendant's conduct warrants substan-tial sanctions is fully supported by the record and one with which the Court is in full accord.

## NATURE OF THE SANCTIONS

The Court has carefully considered the Report, the submissions of the parties, and the many authorities which address the range of sanctions appropriate in circumstances such as are presented here. Repetition of those authorities is unnecessary. Suffice it to say they permit a court to impose substantial sanctions, up to and including entry of default judgment, dismissal of claims, and the like, in a proper case.

In determining the appropriate sanction, a number of factors guide the court's exercise of discretion. In deciding whether dismissal with prejudice is warranted, the Tenth Circuit has identified these factors as guiding a court's discretion: (1) the degree of actual prejudice to the opposing party, (2) the amount of interference with the judicial process, and (3) the culpability of the litigant. *Hancock v. City of Oklahoma City*, 857 F.2d 1394 (10th Cir.1988); *Meade v. Grubbs*, 841 F.2d 1512 (10th Cir.1988). Later cases identify additional factors to consider, including whether the court warned the party in advance that sanctions for noncompliance would result and the efficacy of lesser sanctions. *Jones v. Thompson*, 996 F.2d 261 (10th Cir. 1993); *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir.1992). These standards are generally applicable here, though applied to a defendant and hence involve something other than dismissal of the case. Of course, these standards must be considered in the context

---

12. *Mr. Glasgow's letter to the insurer, dated December 13, 2002, makes no mention of the sanctions order which had been entered December 5, 2002. Also, Mr. Glasgow stated at the sanctions hearing he did not communicate information about the award of sanctions to his client, though it is unclear whether he was referring to Much Shelist, the insurer, or both. Transcript, p. 6.*

13. *Indeed, even looking at the acts of defendant's agents individually, the Court is skeptical of at least some of the explanations defendant offered to excuse its conduct. AIG's representative apparently first indicated he did not attend the settlement* conference because he did not receive notice of it. Statement of Mr. Glasgow at sanctions hearing; Transcript, p. 7. The representative's later letter implies he did have notice of the conference, but just misfiled or misdocketed the letter or otherwise forgot about the conference. Similarly, counsel's first explanation for the insurer's nonattendance, to the effect that it was an unsophisticated non-lawyer lacking familiarity with legal matters, plainly has no relationship to the true facts. AIG, one of the country's largest liability insurers, is not some unsophisticated waif lost in the legal system.

of the "judicial system's strong predisposition to resolve cases on their merits." *Hancock*, 857 F.2d at 1396.

Applying these considerations to the current circumstances, the Court concludes there was some measure of prejudice to the opposing party in preparing for and appearing at mediation or settlement conferences which may have been unsuccessful due to defendant's noncompliance with the rules.[14] Were that the most pertinent consideration, the Court could remedy the situation with a sanction awarding plaintiffs their costs, as was done with the prior sanctions order. However, prejudice to the plaintiffs is not the most relevant factor applicable here.

The most pertinent considerations include the defendant's repeated violations of the rules and orders of this Court. Defendant had been warned of the seriousness with which this Court viewed violation of its orders related to settlement,[15] and had been sanctioned for conduct substantially similar to that now at issue. Notwithstanding that background, defendant nonetheless violated the attendance requirements again. Such circumstances plainly dictate the imposition of substantial sanctions.

■ Like the Magistrate Judge, the Court concludes entry of default judgment against defendant is too extreme a sanction. The Court also agrees with Judge Argo that, given defendant's track record, the imposition of monetary sanctions based on plaintiffs' costs of attending the abortive settlement conference is inadequate. Striking the appropriate balance between those extremes is difficult, but in doing so the Court attaches substantial weight to the need to resolve cases on their merits. Sanctions which prevent a determination on the merits, such as a dismissal with prejudice or entry of a default judgment, are properly reserved for cases where extreme sanctions are warranted.

Here, Judge Argo did not recommend the entry of default judgment against defendant. He correctly noted and considered the need to impose lesser sanctions and concluded a sanction precluding the presentation of defense witnesses and evidence was appropriate. Defendant argues that, in the context of this case, that result is tantamount to entry of default judgment. Though the sanction recommended by Judge Argo was less than default judgment, and may or may not be "tantamount" to it, it is evident the recommended sanction would have a significant impact on the substantive disposition of plaintiffs' claims. The malpractice claim potentially seeks over four million dollars, plus punitive damages. Defendant's ability to offer witnesses or other evidence relating to the firm's representation of the plaintiffs has, potentially, huge economic consequences to the parties. The Court concludes that, while a substantial and severe sanction is warranted, a sanction with less impact on the substantive disposition of the case is more appropriate.

Accordingly, with the qualifications noted herein, the Court adopts the Report insofar as it establishes the need for substantial sanctions against defendant. In lieu of the sanctions recommended by the Magistrate Judge, the Court imposes the following as sanctions for defendant's conduct:

1. Defendant shall pay to the Clerk of the Court for the benefit of the General Court Fund, within ***thirty (30) days*** of this Order, the sum of $1000, attributable to the time the Magistrate Judge and his staff spent in conjunction with the settlement conference.[16]

---

14. *There is, of course, no way to know whether this case might have settled had defendant complied with the various rules and orders, nor does the Court mean to suggest that this case necessarily should have settled.*

15. *In addition, both the local rules and the Court's referral order advise that sanctions may be imposed for noncompliance. LCvR16.2(c)("Failure to attend the settlement conference or failure to cooperate fully, may result in the imposition of sanctions in accordance with LCvR16.1(b)(2) and Fed.R.Civ.P. 16(f))." Order of November 14, 2002, ¶ 11.*

16. *On January 9, 2003, the defendant paid the plaintiffs the costs they incurred in connection with the settlement conference scheduled for December 18, 2002.*

2. Defendant's statute of limitations defense and any similar defenses which, if prevailing, would prevent the disposition of plaintiffs' claims on their substantive merits (i.e. waiver, estoppel or similar defenses) are stricken.

3. Defendant shall pay the plaintiffs' reasonable attorney's fees and costs incurred in pursuit of this case, the amount to be determined by the Court in the ordinary fashion at its conclusion. Defendant will pay plaintiffs' reasonable attorney's fees and costs—win, lose or draw—regardless of whether attorney's fees would otherwise be assessable against the opposing party.

4. Counsel for defendant shall forward a copy of this Order to Much Shelist and to AIG immediately upon its receipt.

Additionally, the Court orders a further settlement conference on *Friday, January 17, 2003, at 9:00 a.m.*, before U.S. Magistrate Judge Robert Bachrach.[17] The parties shall submit, not later than *12:00 noon on Wednesday, January 15, 2003*, a settlement conference statement conforming to the local rules. The provisions of this Court's November 14, 2002, referral order, to the extent not modified by this Order, shall be applicable to this referral and are deemed incorporated herein.

So as to assure there is no possibility of lingering doubt as to who must attend for defendant, and to tailor the requirements somewhat to the special circumstances of this case, the following persons shall appear for defendant:

1. Lead counsel who will try the case;

2. A party representative who is an officer or employee of Much Shelist, with full settlement authority as contemplated by the local rules and referral order.[18]

3. A party representative who is an officer or employee of Much Shelist knowledgeable about the underlying facts and circumstances of the case.[19]

4. A representative of the insurer having full settlement authority as described in the local rules and order.[20]

This Court has neither the authority nor the desire to force the parties to settle this case. It may well be one in which settlement is not feasible or appropriate and, if so, a trial should occur. That is what the Court is here for. However, in the interest of managing its resources and minimizing cost and delay to the parties, the Court does have both the specific and inherent authority to require attendance at, and good faith participation in, a settlement conference. Fed. R.Civ.P. 16(a)(5); *Schwartzman, Inc. v. ACF Industries, Inc.*, 167 F.R.D. 694, 697–98 (D.N.M.1996). The Court expects, and will accept, nothing less.

**IT IS SO ORDERED.**

**17.** *Subsequent to the docket call in this case, the parties jointly advised the Court of their view that, in light of the contentious nature of this sanctions dispute, a different magistrate than Judge Argo might be more successful in exploring settlement possibilities if the Court directed another conference. Both took pains to assure the Court they did not question Judge Argo's impartiality or otherwise object to him, but felt assignment to a different Judge not involved with the sanctions dispute might enhance the prospects for a successful conference. The Court defers to the parties in that regard, but certainly has full confidence in Judge Argo's continuing ability to conduct a proper settlement conference in this case.*

**18.** *Defendant's Objection suggests this would be a Managing Partner or member of its Management Committee. Defendant's Objection, p. 18, n. 14.*

**19.** *As defendant correctly argues, the local rules do not require attendance by a corporate representative who was also a participant in the circumstances giving rise to the case, though that is a common practice. The requirement for attendance by a person familiar with the factual basis for the plaintiffs' claims is added here in the present procedural posture and circumstances of this case. The Much Shelist representative described by paragraphs (2) and (3) may be the same person if both full settlement authority and familiarity with the underlying facts inhere in the same person.*

**20.** *This means the authority to pay, in the representative's discretion, an amount up to policy limits. Referral Order, ¶ 5. If Mr. Weiss possesses such authority, he can satisfy the requirement. If he does not, he should bring along (or send in his place) a higher ranking individual who has such authority.*

## REPORT AND RECOMMENDATION

ARGO, United States Magistrate Judge.

United States District Judge Joe Heaton referred this case to the undersigned Magistrate Judge for the purpose of conducting a settlement conference, which was scheduled for December 18, 2002. As neither the Defendant's representative nor a representative of its insurance carrier appeared, I informed the parties of my intention to recommend that sanctions be imposed. I then conducted a hearing in order to allow the parties to be heard on the issue. Following the presentation by counsel, I took the matter under advisement. This Report and Recommendation is now entered to set forth my recommendations for sanctions.

## BACKGROUND

Rule 16(a)(5) of the Federal Rules of Civil Procedure authorizes the Court to require a party to participate in a settlement conference. *See Smith v. Northwest Financial Acceptance, Inc.*, 129 F.3d 1408, 1419 (10th Cir.1997). The attendance requirements for the conference are specified in Local Civil Rule 16.2 and pertinent to this matter, our local rule requires the appearance of lead trial counsel, a representative of the defendant law firm, and a representative of its insurance carrier. *See also* Judge Heaton's Settlement Conference Order dated November 14, 2002, ¶¶ 2, 5 [Doc. No. 64].

Despite the clear requirement of the local court rule and Judge Heaton's order, neither a representative of the Defendant nor its insurance carrier appeared for the settlement conference. Further, the Defendant's lead trial counsel, Tom L. King, appeared 20 minutes late, causing the conference to be delayed until he arrived.[1] When a party fails to appear for a settlement conference, the Court "may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D)." Fed.R.Civ.P. 16(f); *see also* LCvR 16.2(c) (Failure to attend the settlement conference … may result in the imposition of sanctions in accordance with LCvR 16.1(b)(2) and Fed.R.Civ.P. 16(f)). Such sanctions may include striking of pleadings or parts thereof; staying proceedings until the order is obeyed; default judgment against the disobeying party; an order precluding the offending party to support or oppose designated claims or defenses; an award of expenses and fees; or such other order as the Court deems appropriate. Fed.R.Civ.P. 37(b)(2)(B), (C), (D); LCvR 16.1(b)(2).

## HEARING

Mr. King explained that Richard Glasgow of his firm had specifically advised an attorney with the Defendant law firm that a representative of the firm did not have to appear for the settlement conference. Mr. King explained that this advice was given on his and Mr. Glasgow's understanding that since the law firm had insurance coverage and since the insurance carrier had the sole authority to enter into a settlement agreement on behalf of the law firm, an appearance by a representative of the insurance carrier was all that was required by our local court rule and by Judge Heaton's order. Mr. King went on to explain that he understood that a representative of the insurance carrier was required to attend and he set forth his firm's efforts to advise the insurance company of this. He stated that his firm notified the insurance carrier of their need to be here and that within the last "two days" his firm tried very hard to get them here. When the Court inquired of the specific efforts undertaken by the law firm, Mr. Glasgow stated that he sent a letter to the insurance carrier on November 15th or 16th, advising them of the settlement conference. He then faxed a reminder to the insurance carrier on Friday

---

1. Though Mr. King and Richard M. Glasgow, his co-counsel in the case, were somewhat equivocal in their responses to my statement that I considered Mr. King as lead trial counsel, the court file clearly demonstrates that statement was correct.

*See* Defendant's Response to Court's Order of November 26, 2002, p. 2. [Doc. No. 77] ("Tom King will be lead trial counsel at the trial of this case.").

December 13th. Since he had heard nothing from the insurance representative by Tuesday, December 17th, he placed several phone calls to the insurance representative in New York, but he only got the representative's voice mail. Mr. Glasgow left messages for the insurance representative, asking the representative to call him as soon as possible. Later that afternoon, Mr. Glasgow called the insurance company again and spoke to the representative's supervisor. He then learned that the representative was returning from California and would not be present in Oklahoma City for the settlement conference on December 18th. Mr. Glasgow and the insurance representative finally made telephone contact on the morning of December 18th and the insurance representative claimed he had no notice of the settlement conference, but would make himself available to participate by phone.[2]

In his presentation to the Court, Mr. King candidly admitted that it was inexcusable for the insurance carrier to ignore our order requiring a representative to be present. However, he added that the insurance representatives were not lawyers and were not sophisticated in the justice system, and did not know the importance of these things (presumably attending the settlement conference).[3] He added that since the insurance carrier had already evaluated the case and the case was not going to settle, the representatives did not understand why they are forced "to appear and appear and appear." Realizing his insurance representative had never appeared, Mr. King quickly corrected himself to add "theoretically" appear.

Mr. King admitted that sanctions were warranted but he believed that monetary sanctions in the form of paying for the Plaintiffs' attorneys and the Court's time would be an appropriate sanction. Timothy E. Galligan, the attorney for the Plaintiffs requested default judgment as an appropriate sanction or an order striking the defenses asserted by the Defendant.

## ANALYSIS

Default judgment is a harsh sanction that will only apply if the Defendant's failure to appear for the settlement conference was a result of willfulness, bad faith or some fault of the Defendant, rather than mere inability to comply. *Pendleton Insurance, Anguilla v. Shah,* No. 94–1156, 1994 WL 593887 (10th Cir. Oct.27, 1994); *Held v. Shelter Systems Group Corp.,* No. 93–1225, 1994 WL 47157 (10th Cir. Feb.15, 1994).[4] A willful failure is "any intentional failure as distinguished from involuntary non-compliance. No wrongful intent need be shown." *Pendleton Insurance, Anguilla, supra* at *2. In addition, default judgment is appropriate only where lesser sanctions have been considered and found to be inappropriate. *Held, supra* at *2.

Based upon the undersigned's review of the court file, the failure of the Defendant to appear for the settlement conference, and having considered the presentations by the attorneys for the parties, the undersigned finds that an appropriate sanction is an order precluding the Defendant from presenting a defense against the Plaintiffs' claims on liability.

It appears to the undersigned that the Defendant has consistently displayed an arrogant attitude and disregard for this Court's scheduling orders. For example, in his Au-

---

2. After this Report and Recommendation was dictated, but before the undersigned had signed it, I received a letter from the insurance representative. In pertinent part, the representative states: "Needless to say, there is no excuse for my failure to attend the settlement conference. I can only offer as an explanation that there was an inadvertent failure on my part to ensure the scheduling of the settlement conference in my calendar and to make appropriate transportation arrangements." The entire letter will be made available to Judge Heaton.

3. At the time I did not know which insurance carrier was involved or its degree of sophistication with the justice system, but today, upon receiving the letter from the insurance representative, I learned the unsophisticated carrier is AIG.

4. Unpublished dispositions cited as persuasive authority pursuant to Tenth Circuit Rule 36.3.

gust 14, 2002 Second Amended Scheduling Order, Judge Heaton referred the case to mediation and he directed the session to be held by August 1, 2002. [Doc. No. 36]. Upon the parties joint application to amend the scheduling order, Judge Heaton stated: "This case was *ordered* to mediation by August 1, 2002. Both parties are admonished that an order for mediation is just that—an order. It is not a suggestion to be ignored at will." Third Amended Scheduling Order entered October 2, 2002 [Doc. No. 48] (emphasis in original). The Plaintiffs' presentation to the Court during the December 18th hearing was persuasive that while the Plaintiffs did not bring the matter to the Court's attention as they should have, it was the Defendant's lack of diligence that led to the non-compliance with the order.

On November 14th and November 15th, the Court was required to address discovery matters caused by the Defendant's lack of compliance with the Court's scheduling order and the local court rule. In his November 14th order, Judge Heaton struck the Defendant's motion seeking to quash a deposition, due to the Defendant's failure to comply with LCvR 37.1 [Doc. No. 65] which provides that the Court shall refuse to hear any motion or objections relating to discovery unless counsel for the movant first advises the Court in writing that counsel has personally met and conferred in a good faith attempt to resolve their differences, but they have been unable to reach an accord. The following day, Judge Heaton addressed the Plaintiffs' motion for protective order which *sought to* preclude the use at trial of the deposition of Patricia Rademacher. Order, dated November 15, 2002 [Doc. No. 66]. Judge Heaton noted that the Defendant responded to the Plaintiffs' motion and asserted its own motion seeking to amend its witness list to add Ms. Rademacher to it. Judge Heaton further noted that the deadline for submission of final witness lists had long since expired and the Defendant's explanation for its delay in identifying Ms. Rademacher was not persuasive. Therefore, he granted Plaintiffs' motion for protective order and denied the Defendant's motion to amend its witness list.

Despite the above incidents and the Court's admonishments, the Defendant's most serious violations were still to come. The first such violation occurred as a result of the Defendant's non-compliance with this Court's local court rule regarding participation in the mediation session. The relevant facts regarding this violation are as follows. Due to his concerns that the parties had not participated in the mediation session, which by the third amended scheduling order was to be held by November 15, 2002, Judge Heaton entered an order on November 21st directing the parties to file a report concerning the mediation session. [Doc. No. 68]. After both parties responded to that order, Judge Heaton entered an order on November 26th in which he noted that it appeared that the Defendant participated in the mediation session only by counsel which, if true, was in violation of the Court's local rules. He directed the Defendant to show cause why sanctions should not be imposed for that violation.

The Defendant's response was to blame the Plaintiffs for "complain[ing] after the fact because they were not paid the money they want." *See* Defendant's Response to Court's Order of November 26, 2002, p. 2. [Doc. No. 77]. However, the truth is that Plaintiffs did not complain to the Court about the Defendant's non-compliance with the local court rule, but simply listed the counsel and parties in attendance, among other items, in their report to the Court, as the Court directed on November 21st. Significant to the type of sanctions the undersigned now recommends, the Defendant in that response noted that a representative of the insurance carrier was to be present for the Monday November 11th mediation session, but during the afternoon of Friday November 8th, the New York insurance representative advised the Defendant's attorney that he would not be able to attend the session. Defendant's response, p. 1. To his credit, Mr. Glasgow promptly sent a letter via facsimile to the Plaintiffs' attorneys and to the mediator informing them of this development but agreeing to present the insurance representative by phone. After re-

ceiving the Defendant's response to his show cause order, Judge Heaton entered an order on December 5th imposing monetary sanctions in the amount of $1,120 against the Defendant for its failure to comply with the local court rule. Order dated December 5, 2002, [Doc. No. 81]. Specifically, Judge Heaton noted "Lead trial counsel did not attend. A representative of the client was not present. A representative of defendant's insurer did not attend in person, but was available by phone. Further, leave for excuse from the requirements of personal attendance at the mediation was neither sought nor granted." Order dated December 5, 2002, p. 1–2 [Doc. No. 81]. Judge Heaton went on to explain the attendance requirements of the local rule and why these requirements are in place.

This order alone should have clarified any misunderstanding the Defendant's attorneys were under as to who should have been present for the settlement conference before the undersigned. First, while Mr. Glasgow was present for the mediation session, Judge Heaton noted that lead trial counsel [Mr. King] was not. Yet, Mr. King explained his approximate 20 minute tardiness at the settlement conference by stating that his son woke up that morning not feeling well so Mr. King let him sleep a little longer before taking him to school, believing that since Mr. Glasgow would be at the settlement conference on time, this would be sufficient. He did this, without even extending the courtesy to the Court and counsel of advising that he would be late and allowing us to make the decision to proceed on with the conference. Secondly, despite the Defendant's attorneys' belief that a representative of the client was not required to attend the settlement conference, Judge Heaton's order specifically addressed both a representative of the client and a representative of the insurance carrier.

Due to the attendance problems at the mediation session, Ann Marshall, this Court's ADR administrator, asked me if I wanted her to contact the attorneys for the parties to insure that there would be no problems at the settlement conference. I accepted her offer and on or about December 10th, Ms. Marshall contacted the Defendant's attorneys and conveyed her concerns about compliance with the settlement conference order. She was advised by Defendant's attorneys that "People in our office understand and respect that and we have hopefully conveyed that to the necessary people that needed to know it. And hope any problems that occurred in the past are resolved." Voice mail call back to Ms. Marshall from Defendant's attorneys.

Additionally, the undersigned had a conversation with Mr. Glasgow just a few days prior to the settlement conference on another issue and I was not advised of any concerns or problems regarding the appearance of the Defendant's representative or a representative of the insurance carrier.

As noted, it was not until the scheduled settlement conference that the Court and the Plaintiffs were advised that no representative of the Defendant or its insurance carrier would be present for the hearing. This was after the Plaintiffs' lead trial counsel traveled from Michigan to Oklahoma City for the sole purpose of the settlement conference and after both of his clients had adjusted their busy schedules to be present personally as our rules require. This is also after the undersigned had spent several hours the day before preparing for the settlement conference by reading the briefs on the pending motion for summary judgment and other pleadings in the Court file in order to familiarize myself with the case. The Defendant's excuses for the non-appearance of the representative of the firm and a representative of the insurance carrier are wholly unacceptable.

First, LCvR 16.2 clearly requires the appearance of both the client representative and a representative of the insurance carrier. See LCvR 16.2(c). Moreover, as noted above, any confusion as to this requirement should have become readily apparent in Judge Heaton's sanction order of December 5th where he noted that a representative of the client was not present and that a representative of the insurance carrier only ap-

peared by phone. As I explained to the Defendant's attorneys, the reason for this requirement is to have (1) a person knowledgeable of the facts of the case so that the merits of the case can be freely discussed during the settlement conference and (2) a person who could make a decision to settle the case and pay the amounts agreed upon. While the insurance carrier apparently could have satisfied the second requirement above, only the two attorneys from the Defendant law firm involved in the representation of the Plaintiffs in the underlying lawsuit which gave rise to this malpractice action could have satisfied the first requirement. As I further advised the Defendant's attorneys, I had prepared extensively the day before the settlement conference and there were many factual issues I wanted to discuss with a member of the Defendant law firm which I believe were pertinent to the merits of the Plaintiffs' lawsuit and which might lead to a settlement.[5]

The Defendant's excuse for not having a representative of the insurance carrier present is also rejected. The insurance carrier offered no excuse for the last minute decision to not attend the mediation session and its claimed reason for not attending the settlement conference was that the representative did not receive notice of the conference.[6] Yet, Mr. Glasgow stated that he notified the insurance carrier of the scheduled settlement conference on about November 15th or November 16th, approximately one month prior to the conference. Further, he faxed a reminder to the insurance carrier on December 13th, some five days prior to the conference and then placed followup phone calls the day before the conference. The insurance carrier's lack of attention to such notification or lack of procedures in place to insure that such notification is brought to the attention of the proper person is no excuse for its non-compliance with the Court's local court rules and the order setting the settlement conference.

The Defendant's attorneys offered to conduct the settlement conference with the insurance representative being available by telephone. However, the undersigned, after consulting with the Plaintiffs' attorney, declined the invitation for several reasons. First, the undersigned's experience with trying to conduct settlement conferences by phone has almost consistently proven to be fruitless. Secondly, I needed to discuss the facts of the case not with an insurance representative but with one of the two lawyers who were involved in representing the Plaintiffs in the underlying lawsuit that led to the malpractice action. Finally, as Judge Heaton noted, Defendant had not sought to be excused from the requirement of personal attendance. Additionally, the undersigned was under the impression that the Defendant would not negotiate in good faith to settle the case at that point, due to the fact that I announced my intention to recommend sanctions regardless of whether settlement was reached. My impression was that Defendant would then contend during the sanctions hearing "no harm, no foul." In otherwords, the Defendant would contend that it would have been a waste of time for the insurance representative or representative of the client to have been here anyway, since the settlement negotiations proved fruitless. In fact, the Defendant's attorneys made a similar argument during the hearing. However, as Judge Heaton noted in his order imposing sanctions, we have no way of knowing whether the settlement conference would have been productive had the Defendant complied with the Court's local rules and Judge Heaton's order setting the settlement conference. While the parties represented in their settlement conference statement that they were a long way apart, the undersigned has seen similar splits in many cases that have in fact settled during the settlement conference and these statements did not discourage the undersigned's optimism that a settlement con-

---

**5.** I also had factual issues to discuss with the Plaintiffs in assessing the strengths and weaknesses of each party's position.

**6.** This was the reason given by the Defendant's attorneys during the hearing and yet the insurance representative in his letter to me seems to blame a docketing problem and failure to make transportation arrangements.

ference would have been productive in this case.

The trial of this case is set approximately three weeks away and due to the holidays and the undersigned's schedule, not to mention the schedules of the parties and their attorneys, it seems unlikely that another settlement conference could be scheduled and completed before the trial date.

In determining the type of sanctions to recommend, the undersigned has considered the following. First, the sanction of striking a pleading or part thereof does not seem appropriate as this matter involves the lack of attendance at a settlement conference and not an offending pleading. The sanction of staying the proceeding until a settlement conference could be conducted was also considered, but due to the holidays and the undersigned's schedule, this would most likely result in the trial being postponed, which would only punish the Plaintiffs for the Defendant's wrongful conduct. A monetary sanction was also considered, but as noted, Judge Heaton already imposed one for the Defendant's similar conduct at the mediation session and obviously that sanction did not preclude the current conduct. Plaintiffs' requested sanction of a default judgment was also considered but as noted, the Court should only impose such sanction when lesser sanctions have been considered and found to be inappropriate. The undersigned finds that a lesser sanction of precluding the Defendant from presenting any witnesses, exhibits, testimony or evidence, other than through cross examination of Plaintiffs' witnesses, would be an appropriate sanction. *Oklahoma Federated Gold and Numismatics v. Blodgett*, 24 F.3d 136, 139 (10th Cir.1994). However, it is recommended that Defendant be allowed to present witnesses solely as to the amount of damages, if any, suffered by the Plaintiffs as a result of the Defendant's alleged malpractice and contractual billing practices.

## RECOMMENDATION

In accordance with the above, the undersigned Magistrate Judge recommends that sanctions be imposed against the Defendant for its non-compliance with the Court's order setting the settlement conference and the Court's local court rules on attendance requirements for the settlement conference. The recommended sanction is that Defendant be precluded from defending against the Plaintiffs' liability claim, other than through cross examination of Plaintiffs' witnesses, but that Defendant be allowed to present witnesses solely as to the amount of damages if any, Plaintiffs suffered as a result of Defendant's alleged malpractice and contractual billing practices. The parties are advised of their right to object to this Report and Recommendation by December 30th 2002, in accord with 28 U.S.C. § 636 and Local Civil Rule 72.1 by filing any objections with the Clerk of this Court. The parties are further advised that failure to make a timely objection to this Report and Recommendation waives any right of appellate review of both factual and legal issues contained herein. *Moore v. U.S.*, 950 F.2d 656, 659 (10th Cir. 1991).

Dated: Dec. 20, 2002.